VIRGINIA VALENTINA MARTÍNEZ MATÓ, ETC., Appellant, *v.* REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1025. Submitted July 12, 1938.—Decided July 26, 1938.

*Oscar Souffront* for appellant. The registrar appeared by brief.

Mr. Justice De Jesús delivered the opinion of the court.

By deed No. 83 of May 6, 1938, executed before Notary Oscar Souffront, Teresa Mató y Avellanet, widow of Martínez, mortgaged a rural property to Virginia Valentina Martínez y Mató, to secure the sum of $11,242.44 and two additional credits of $500 each to cover respectively interest after maturity and costs and attorney's fees in case of judicial claim.

In the fourth paragraph of said deed there is a clause marked with the letter "G" which textually reads as follows:

"(G) The mortgage herein constituted is likewise made extensive to any homestead right which the mortgagor or her successors and assigns might have in the mortgaged property, said homestead right being specifically mortgaged to secure the loan already mentioned."

On presentation of the deed for record in the Registry of Property of San Germán, in whose district the mortgaged property is located, the registrar refused such record as to the inclusion therein of the homestead right, and set forth the legal grounds for such refusal in a decision which reads as follows:

"The foregoing instrument is recorded on the back of folio 198, vol. 21 of the Municipality of Maricao, property No. 217 quadruple, inscription 16 *a;* but the record thereof is denied as to the inclusion of the homestead right, because according to clause 'G' of the deed, the mortgage is made · extensive to any homestead right that the mortgagor or her successors and assigns might have in said property, and said homestead right can not thus be included, as that would require the mortgagor to be the holder of a homestead right which she does not actually have, according to said clause, and only real property and rights which have a real but not a hypothetical existence at the time of making the contract or deal are recordable

in the registry. 51 P.R.R. 480. A cautionary notice is entered in favor of the mortgagee for the statutory period.''

Feeling aggrieved by the decision of the registrar, the mortgagee took an appeal therefrom praying for a reversal of the decision and for an order directing the registrar to record the mortgage with the inclusion of the homestead right.

Both the appellant and the registrar in their respective briefs invoke the case of *Franceschi* v. *Claudio,* 51 P.R.R. 479, and the appellant in addition relies on that of *Rodríguez* v. *Registrar,* 51 P.R.R. 360.

In the first of these two cases, at page 485, it was said:

''The 'Act to define homestead and to exempt it from forced sale,' approved on March 12, 1903 (Comp. Stat. 1911, sec. 100 *et seq.*), and which was in force on the date that the plaintiffs purchased the property from Ortiz Perichi, is the statute which controls the determination of the rights of the litigants herein. Said act provides:

'' 'Section 3.—That no release, waver (waiver) or conveyance of an estate so exempted shall be valid unless so expressly provided in the instrument of conveyance by such householder his or her wife or husband, if he or she have one, or unless possession is obtained or given up pursuant to the conveyance, or without the orders of the district court directing the release thereof whenever the exemption is continued to a child or children.' ''

In order to dispel any doubt that might exist as to the correct interpretation of section 3 above transcribed, this court further said:

''We must state, in order to avoid a broader interpretation of said dictum than the one we had in mind, that what we meant to say was that the owner of a homestead right may sell, barter, or encumber it, provided he expressly so declares in the corresponding deed or document; and that the right of homestead is also conveyed to the purchaser of realty where the vendor, by the terms of the contract, sells, assigns, and conveys all his right, title, and interest in the realty, and delivers the material possession thereof to the vendee, without making an express reservation of his homestead right.''

If the law in force at the time the mortgage contract herein was executed had been "An Act to define homestead and to exempt it from forced sale," approved March 12, 1903, on the authority of the decision in *Franceschi* v. *Claudio, supra,* we would not have hesitated to reverse the decision of the registrar and to order the registration as requested by the appellant. But the law in force now and at the time of the making of that contract is a different one. The cited Act of 1903 was expressly repealed by Act No. 87 of May 13, 1936 (Session Laws, p. 460), entitled: "An Act to establish the right of homestead, to exempt it from forced sale, etc.," whose section 8 literally transcribed reads as follows:

"Section 8.—An Act entitled 'An Act to define homestead and to exempt it from forced sale,' approved March 12, 1903, is hereby repealed in all its parts."

Section 3 of the Homestead Act of 1903 already transcribed permitted the waiver of such right if it was so expressly provided in the instrument of conveyance executed by the householder.

Although the act had been on our statute books ever since 1903, it had remained practically unknown both to the public and to the profession. It was not until 1926 that this court, in its opinion in the important case of *Dávila* v. *Sotomayor,* 35 P.R.R. 726, brought it out from the oblivion in which it had been buried, into the light before the bar and the general public. Mr. Chief Justice Del Toro was more than justified when he said in the opinion in that case, at page 730:

" . . . . On March 20, 1903, the Legislative Assembly of Porto Rico enacted an 'Act to define Homestead and to exempt it from forced sale,' and rarely have questions been raised in relation to that enactment. It seems that during so many years since its enactment the people do not yet realize that such law exists. Such has not been the case in the states and territories of the Union where statutes in identical, similar or different forms have long existed and where thousands of decisions have been rendered by the courts either interpreting the spirit and scope of them or defining and settling the many complex problems raised by their application. . . . "

Thus warned of the existence and scope of said law, moneylenders and creditors were not long in seeking a way to circumvent it, and ever since then a clause was inserted in mortgage deeds whereby the mortgagor would waive any right of homestead that he might have in the encumbered property, thus frustrating the purpose of the legislator not to leave without protection the relatives of the mortgagor whose mortgage was foreclosed. Realizing this situation, the Legislature again in 1936 fought the evil and enacted the present Homestead Act, from which any possible waiver of the right of homestead is eliminated. In order to carry out its purpose, the Legislature repealed in 1936 the Act of 1903, and provided by section 1 of the act in force, in language that admits of no doubt, that:

*"This right of homestead is unrenounceable and any pact to the contrary is declared null."* (Italics ours.)

But in case such a definite provision were not sufficiently explicit, the lawmaker in sections 5 and 6 of the same act again says:

"Section 5.—No sale shall be made, under a judgment or execution, of any such urban or rural property when the same is claimed or occupied as a homestead, whether registered or not in the registry of property, unless a sum greater than five hundred dollars is obtained therefor.

• '' ※ ※ ※ ※ ※ ※ ※

"Section 6.—In case no claim whatsoever is established before the officer in charge of the auction sale, the person entitled to the claim of homestead may institute the corresponding ordinary action within sixty (60) days after the date on which the auction is held."

A mortgage contract necessarily implies the right to foreclose and sell the thing mortgaged in order to realize the security. That being so, and as it is declared in section 1 of the act that the right of homestead is unrenounceable and that any pact to the contrary is void, and in section 5 that no sale shall be made, under a judgment or execution, of any urban or rural property when the same is claimed or

occupied as a homestead, . . . . ., unless a sum greater than five hundred dollars is obtained therefor, it is evident that any mortgage contract wherein it is sought to include the right of homestead is contrary to law in so far as that right is concerned. And if the contract is contrary to law as regards the right of homestead, it is void, by virtue of the express provisions contained in section 1207 of the Civil Code (1930 ed.), which reads as follows:

"Section 1207.—The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, *provided they are not in contravention of law,* morals, or public order."

The decision in *Rodríguez* v. *Registrar,* 51 P.R.R. 360, cited by the appellant, is not applicable to the case at bar. That case dealt with the private sale of an immovable. This court, speaking through Mr. Justice Wolf, said:

"Where a person has the total ownership of a piece of property and sells it, intending therewith to alienate or dispose of his entire title and interest, the right of homestead becomes necessarily merged in the greater right of ownership. *In praesentia majoris cessat potentia minoris.*"

The case of *Rodríguez* v. *Registrar, supra,* is fully in accord with the law. It was not a question there of selling the right of homestead independently of the other property rights which the vendor had in the immovable, and, as aptly said by the court in the last paragraph of the opinion, "a different interpretation would, where the whole property is worth less than $500, put an obstacle to the freedom of alienation and might therefore give rise to a constitutional question."

As the clause of the said deed No. 83, whereby it is sought to make the mortgage extensive to any homestead right that the mortgagor or her successors in interest might have in the mortgaged property, is void, an affirmance of the decision appealed from lies.